# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PENN MUTUAL LIFE INS. CO., : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | NO. 09-CV-0663 (JCJ) |
| : | |
| RODNEY REED 2006 INS. TRUST, : | |
| et al., : | |
| : | |
| Defendants. : | |

### MEMORANDUM AND ORDER

Joyner, J.                                                   April 25, 2011

Pending before the Court are Defendants' Motion to Compel (D.I. 99), Plaintiff's response in opposition thereto (D.I. 112), and Defendants' reply in further support thereof (D.I. 122). For the reasons set forth in this Memorandum, the Court grants the Motion in part, denies it in part, and reserves a ruling in part.

### I. BACKGROUND

In this action, Plaintiff Penn Mutual is seeking a declaratory judgment that a policy of life insurance that it issued to the Rodney Reed 2006 Insurance Trust is invalid because it is a stranger-originated life insurance (STOLI) policy.

During discovery, Defendants sought information concerning Penn Mutual's investigation into, and manner of dealing with, suspected STOLI transactions. More specifically, Defendants sought information about the work of a small group of Plaintiff's

1

senior officers that had convened for the purpose of addressing STOLI concerns, which group included Plaintiff's in-house counsel, and the investigation and review of the Reed policy undertaken by Plaintiff's in-house counsel. Plaintiff objected to certain aspects of Defendants' requests on the grounds of attorney-client privilege and/or the work-product doctrine.[1] The crux of Defendants' challenge to Plaintiff's assertion of privilege is that the in-house counsel, Franklin Best, was acting in a business capacity rather than in a legal capacity when serving on the group and when undertaking the investigation into potential STOLI policies.

## II. STANDARD OF REVIEW AND GOVERNING LAW

The Federal Rules of Civil Procedure provide for the discovery of any nonprivileged matter relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1). When a person from whom discovery is sought objects to a request, as here, on the ground of attorney-client privilege and/or work-product protection, the party seeking the discovery may move the court for an order compelling production. Id. R. 37(a).

---

[1] The discovery presently being sought falls into three general categories: (1) responses to deposition questions that Plaintiff's witnesses refused to answer; (2) documents that Plaintiff withheld altogether; and (3) documents that Plaintiff produced but then "clawed back" on privilege grounds.

2

In deciding what is subject to the attorney-client privilege, a district court exercising diversity jurisdiction must, pursuant to Federal Rule of Civil Procedure 501, apply the privilege law that would be applied by the courts of the state in which it sits. Samuelson v. Susen, 576 F.2d 546, 549 (3d Cir. 1978). Delaware courts use the Restatement (Second) of Conflict of Laws and its "most significant relationship test" to determine which state's privilege law applies. In re Teleglobe Commn'cs Corp., 493 F.3d 345, 358 (3d Cir. 2007) (quoting Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC, 832 A.2d 116, 124 (Del. Ch. Ct. 2003)); see also 3Com Corp. v. Diamond II Holdings, Inc., No. 3933, 2010 Del. Ch. LEXIS 126, at *17 (May 31, 2010). The Third Circuit has predicted, however, that "Delaware would follow the practice of the federal system and most states, and decide a choice-of-law dispute only when the proffered legal regimes actually conflict on a relevant point." In re Teleglobe, 493 F.3d at 358; see also In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997) (declining to engage in a choice-of-law analysis because the state privilege laws did "not differ in any significant way" and "[t]he elements of the attorney-client privilege [we]re well-known and . . . not, in any material respect, disputed"), abrogated in part on other grounds, 130 S. Ct. 599 (2009).

Defendants assert that Pennsylvania law applies because the communications at issue took place in Pennsylvania. (Defs.' Mem. 9 n.6.) Plaintiff does not address the choice-of-law question but cites cases applying, inter alia, federal law, Delaware law, and even New Jersey law. The Court need not undergo a full choice-of-law analysis, however, because the laws of Pennsylvania and Delaware-the two states with the most significant relationships to the dispute-are similar for purposes of the issues presented in this Motion.[2]

---

[2] In Pennsylvania, the statute governing the attorney-client privilege in civil matters provides that "counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. Cons. Stat. Ann. § 5928. Admittedly, "Pennsylvania courts have been inconsistent in expressing the scope of the attorney-client privilege," Gillard v. AIG Ins. Co., No. 10-2010, 2011 Pa. LEXIS 393, at *33 (Feb. 23, 2011); while some found the privilege applicable to attorney-client communications regardless of who made the communication, others held that the privilege protected "only those communications made by a client to his or her attorney" and, derivatively, "confidential communications from an attorney to his or her client . . . to the extent that such communications contain and would thus reveal confidential communications from the client." Nationwide Mut. Ins. Co. v. Fleming, 924 A.2d 1259, 1264 (Pa. Super. Ct. 2007), aff'd on other grounds by an equally divided court, 992 A.2d 65 (Pa. 2010). Just recently, however, the Pennsylvania Supreme Court resolved this inconsistency, holding that, "in Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." Gillard, 2011 Pa. LEXIS 393, at *40; see also id. at *19 (recognizing that the two-way approach is "consistent with the approach of the Restatement Third").
Similarly, in Delaware,

> [a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative.

Del. R. Evid. 502(b); see also Moyer v. Moyer, 602 A.2d 68, 72 (Del. 1992) (paraphrasing the Delaware rule as applying to a "(1) communication, (2) which is confidential, (3) which was for the purpose of facilitating the rendition of professional legal services to the client, (4) between the client and his attorney" (internal quotation marks omitted)). See generally In re Teleglobe

While the attorney-client privilege comes from state law in diversity cases, "[t]he work-product doctrine, codified in Fed. R. Civ. P. 26(b)(3), governs all cases in federal court. State formulations of the privilege are inapplicable." Leonen v. Johns-Manville, 135 F.R.D. 94, 96 (D. N.J. 1990) (citing United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988)). Under the Rule, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). In the Third Circuit, "[a] document is considered to have been prepared in anticipation of litigation if 'in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Smith v. Life Investors Ins. Co., No. 07-0681, 2009 WL 3364933, at *6 (W.D. Pa. Oct. 16, 2009) (quoting Martin v. Bally's Park Place Hotel Casino, 983 F.2d 1252, 1258 (3d Cir. 1993)). "The party asserting work product protection has the burden of demonstrating that the disputed documents were prepared

---

Commn'cs Corp., 493 F.3d 345, 359 (3d Cir. 2007) ("The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000))).

5

by or for the party or its attorney and prepared in anticipation of litigation or for trial." Novartis Pharma. Corp. v. Abbott Labs., 203 F.R.D. 159, 163 (D. Del. 2001).

### III. DISCUSSION

#### A. Deposition responses

Defendants challenge the deposition testimony of Plaintiff's witnesses on the ground that the attorney-client privilege is inapplicable to (a) the investigation and conclusions of the management group, because Best was (purportedly) working in a business rather than a legal capacity, and (b) Best's investigation into potential STOLI policies, again because Best was (purportedly) working in a business rather than a legal capacity. (Defs.' Mem. 1-2, 10-11.)

It is true that when communications involve an in-house attorney, the communications must be for legal, rather than business, purposes in order to be protected. See, e.g., SEPTA v. CareMarkPCS Health, LP, 254 F.R.D. 253, 258 (E.D. Pa. 2008) ("The primary purpose' of the communication at issue must be 'to gain or provide legal assistance' for the privilege to apply due to the fact that 'in-house counsel may play a dual role of legal advisor and business advisor.'" (citation omitted)); 3m Corp. v. Diamond II Holdings, Inc., No. 3933, 2010 Del. Ch. LEXIS 126, at

*26-28 n.37 (May 31, 2010) (recognizing that "advice transmitted to or offered by general counsel will not be privileged when it is 'business diction' as opposed to legal advice"); Gillard v. AIG Ins. Co., No. 10-2010, 2011 Pa. LEXIS 393, at *19 n.8 (Feb. 23, 2011) (noting the "central requirement that protected communications be for the purpose of securing or providing professional legal services" and that "the privilege does not extend to business advice").

Plaintiff has provided evidence, however, that Best was acting in his legal capacity at all relevant times. For example, Best attests in an affidavit that he is "employed as Chief Legal Officer" at Penn Mutual; that "[o]ther than serving as Secretary to the Board of Trustees and Chairman of the Penn Mutual Political Action Committee[ he] do[es] not have any business-related functions at Penn Mutual"; that he "review[s] and analyze[s] certain life insurance policies issued by Penn Mutual for the purpose of rendering legal advice to Penn Mutual"; and that his participation in the management group "was limited to the analysis of the legal implications of STOLI and rendering legal advice associated therewith." (Best Aff. ¶¶ 1, 3, 4, 11, Pl.'s Br. Ex. A.)[3]

---

[3] More specifically, Best attests that "STOLI raises legal issues that include the violation of insurable interest laws and public policy." (Best Aff. ¶ 9, Pl.'s Br. Ex. A.)

Specifically, Defendants challenge the testimony of Kirsten Pedersen, Vice President of Operations at Penn Mutual, insofar as Pedersen refused to answer whether the group had proposed particular changes to language in Plaintiff's insurance application to protect the company from STOLI business, (Defs.' Mem. 5 (citing Pedersen Dep., Defs.' Mot. Ex. 5)), and about Best's involvement, input, or recommendations regarding STOLI policies. (Id. at 7.) Defendants acknowledge that, subsequent to the depositions in question, Plaintiff agreed to have Ms. Pedersen answer questions about the substance of Penn Mutual committee meetings, including the decisions reached and recommendations made by the committee, so long as the involvement, input, or recommendations made specifically by in-house counsel Best were not disclosed. (Pl.'s Br. 3-4; Defs.' Reply 5.) While this offer does not satisfy Defendants, it satisfies the Court, which finds that Defendants' broader request calls for information protected by the attorney-client privilege. Best attested that he was only acting in a legal capacity, and the record from the deposition testimony before the Court substantiates this. That Best's input could have an impact on future business does not minimize the fact that in-house counsel had made recommendations to address legal concerns with STOLI policies. See, e.g., Ford, 110 F.3d at 966 ("Certainly, the

ultimate decision reached by the Policy and Strategy Committee could be characterized as a business decision, but the Committee reached that decision only after examining the legal implications of doing so. Even if the decision was driven . . . principally by profit and loss, economics, marketing, public relations, or the like, it was also infused with legal concerns, and was reached only after securing legal advice.").

Defendants next challenge the testimony of William Nicholson, Director of Underwriting, insofar as Nicholson refused to answer certain questions about the "red flags" that the group identified as indicating a policy may be STOLI. (Defs.' Mem. 6 (citing Nicholson Dep., Defs.' Mot. Ex. 5).) Based on the deposition transcript pages provided to the Court, it appears that the witness in fact answered questions about whether certain circumstances would constitute red flags and whether certain red flags were present in the Reed application. (See Nicholson Dep. 106:5-25, Defs.' Mot. Ex. 5.) The motion to compel further responses is denied.

Defendants also challenge the testimony of Best insofar as he refused to answer exactly how he identified the Reed policy as a potential STOLI policy. (Defs.' Mem. 6-7 (citing Best Dep., Defs.' Mot. Ex. 6).) Best testified that, in his role as in-house counsel, he had conducted a review of Plaintiff's life

insurance policies to identify potential STOLI policies. (Best Dep. 29:21-24, Defs.' Mot. Ex. 3.) What Defendants seek, the specifics of his investigation, is privileged. See, e.g., Montgomery Co. v. Microvote Corp., 175 F.3d 296, 304 (3d Cir. 1999) (holding billing records to be privileged because they revealed the nature of the legal services the attorney rendered); cf. Ford, 110 F.3d at 967 (reasoning that work-product protection applied to meeting agendas because a party working backwards from them could determine the methodology of studies plaintiff had undertaken, and such studies would show "the issues of most concern" to the litigation team).

To the extent that Defendants challenge Best's refusal to answer the question, "How does the legal department educate underwriters about new legal requirements?" (Defs.' Mem. 4-5 (citing Best Dep., Defs.' Mot. Ex. 5)), however, the Court agrees with Defendants that this question-concerning the method by which Plaintiff communicates information, not the substance of the information-does not call for privileged information.

## B. Production of undisclosed documents

Defendants' First Request for Production of Documents requested, among other things,

- All documents concerning [Plaintiff's] investigation, audit or review of the Reed Policy after it was issued,

> or any attempts to investigate or verify any statements or answers in the Application or the Agent's Underwriting Report. (Req. No. 8.)
> - All documents concerning [Plaintiff's] decision to attempt rescission of the Reed Policy. (Req. No. 9.)
> - From January 1, 2003 until the present, all documents concerning [Plaintiff's] internal policies, underwriting guidelines, employee training manuals, contracts or memos to agents or others involved in the marketing, solicitation, underwriting, binding or delivery of [Plaintiff's] life insurance policies, marketing materials or similar guidance or criteria with respect to [STOLI policies]. (Req. No. 11.)
> - All documents concerning the development of, purpose of or drafts of the Application and any form applications from which the Application was made, including without limitation all documents concerning the development, purposes of, implementation and prior drafts or versions of Question F.4, Question I.2, Question I.3, Question N.3 and Question N.4. (Req. No. 14.)

(Defs.' Mem. 7-8.) Plaintiff agreed to produce all responsive, nonprivileged documents, noting in response to Request Number 11 that it would further limit its response to documents relating to the Reed policy or Reed Trust. (Id. at 8 (citing Defs.' Mot. Ex. 7).) Defendants' Motion asserts, however, that "[b]ased on the privilege log provided by Penn Mutual, it appears that Penn Mutual has also improperly withheld responsive documents relating to the working of the senior management group and Mr. Best's independent investigation on the grounds of the attorney-client and work product privileges." (Id. (citing Defs.' Mot. Ex. 8).)

As Defendants do not specify which of the approximately one hundred documents on the privilege log they are challenging, (see

11

id.),[4] and Plaintiff has not provided any of the documents to the Court, however, making a decision by this Court at this juncture is premature. See, e.g., United Coal, 839 F.2d at 966 (stating that in camera review was the proper procedure for resolving privilege disputes). Thus, Defendants are to identify to Plaintiff which of the documents from Plaintiff's privilege log they are seeking, keeping in mind the Pennsylvania Supreme Court's recent holding on the scope of the attorney-client privilege and this Court's ruling on the challenges to the deposition testimony. If the parties are unable to agree on the applicability of the attorney-client privilege or work-product doctrine, Plaintiff is to submit the disputed documents for in camera inspection, after which review the Court will render a decision.

## C. Production of "clawed-back" documents

Defendants seek an email Bates-numbered PMReed-0000057, addressed to Best and copying a Jacquie Williams, which reported that the sender was attaching copies of two payments received for the Reed policy in 2009 and reiterated information about the

---

[4] Defendants seemingly rely on their attorney-client privilege argument regarding the depositions-that the documents were for business, not legal, purposes-and also argue that the work-product doctrine is inapplicable to this category of documents because "[t]here is no evidence that the work of the senior management group or Mr. Best's independent investigation was undertaken in response to any threat of litigation." (Defs.' Mem. 12.)

12

payments. (Defs.' Mot. Ex. 12.) Plaintiff says that it is protected by the attorney-client privilege and the work-product doctrine, in that the email was sent at Best's request for the purpose of soliciting legal advice from outside counsel regarding the identity of the payor of the premium payments. (Pl.'s Br. 8 (citing Best Aff. ¶ 7).) Defendants argue that the email must be disclosed because there is no confidential information-considering that Defendant Christiana Bank was the payor-and because the email does not reveal any mental impressions or legal advice. (Defs.' Mem. 12-13.) After <u>in camera</u> review, this Court finds that the email is not protected from disclosure. <u>See, e.g.</u>, <u>Wise Invs., Inc. v. Bracy Contracting, Inc.</u>, No. 01-3458, 2002 WL 31955990, at *3 (E.D. Pa. Oct. 23, 2002) ("The attorney-client privilege does not protect documents that merely describe or convey information gathered from outside sources.").

Defendants also seek a 2007 email Bates-numbered PMReed-0001089, addressed to ten recipients, including Best, that attached supplemental forms used by other insurance carriers in connection with premium finance business. (Defs.' Mot. Ex. 12.) Defendants assert that the information "comes from third parties-other insurance carriers-and cannot possibly be deemed confidential." (Defs.' Mem. 13.) Defendants add that the email "reflects no legal advice or mental impressions." (<u>Id.</u>) As

13

noted supra, "[t]he attorney-client privilege does not protect documents that merely describe or convey information gathered from outside sources." Wise, 2002 WL 31955990, at *3; see also Asousa P'ship v. Smithfield Foods, Inc. (In re Asousa P'ship), No. 04-1012, 2005 WL 3299823, at *3 (Bankr. E.D. Pa. 2005) ("Work product must be created by a party or its agent."). While Plaintiff asserts that it "unredacted this document and reproduced it to the Trust Defendants," (Pl.'s Br. 8), Defendants attach a document that was only partially redacted. Plaintiff must produce an unredacted version.

Finally, Defendants seek a "Policy Summary Slip" Bates-numbered PMReed-0000450-51, which summarizes facts from Plaintiff's records concerning the Reed policy. (Defs.' Mot. Ex. 12.) Defendants assert that "because it does not reflect any confidential information or attorney mental impressions, it is not privileged and should be produced." (Defs.' Mem. 12.) Plaintiff provides evidence in the form of an affidavit from Best, however, attesting that he authored this document "for the purposes of (1) soliciting legal advice from outside counsel; and (2) in anticipation of impending litigation concerning the Reed Policy" such that it is protected by attorney-client privilege and the work-product doctrine. (Best Aff. ¶ 6, Pl.'s Br. Ex. A.) After reviewing the document, the Court finds that it is

14

protected, at the very least by the work-product doctrine. Cf. SEPTA, 254 F.R.D. at 261-62 ("Absent specific evidence to the contrary, the Court finds that Ms. Hankins' affidavit proclaiming that the contested e-mails reveal her legal advice to her clients is sufficient to establish that they were privileged, regardless of whether or not she was the sender.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel is granted in part, denied in part, and a ruling reserved in part.[5]

---

[5] In light of the fact that Defendants' Motion is only granted in part, the Court declines Defendants' request to award attorneys' fees and costs. See generally Fed. R. Civ. P. 37(a)(5)(C) ("If the motion [to compel] is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."); Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995) ("[T]he imposition of sanctions for abuse of discovery under Fed. R. Civ. Pro. 37 is a matter within the discretion of the trial court." (internal quotation marks omitted)).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

PENN MUTUAL LIFE INS. CO., :
:
        Plaintiff, : CIVIL ACTION
:
  v. : NO. 09-CV-0663 (JCJ)
:
RODNEY REED 2006 INS. TRUST, :
et al., :
:
        Defendants. :

## ORDER

AND NOW, this 25th day of April, 2011, upon consideration of Defendants' Motion to Compel (D.I. 99), Plaintiff's response in opposition thereto (D.I. 112), and Defendants' reply in further support thereof (D.I. 122), and for the reasons set forth in the attached Memorandum, it is hereby ORDERED that Defendants' Motion is GRANTED IN PART, DENIED IN PART, and a ruling RESERVED IN PART, as follows:

1) Defendants' motion to compel responses to questions posed by Defendants at the depositions of Franklin Best, William Nicholson, and Kirsten Pedersen is

    a) GRANTED to the extent that it seeks from Best the method by which the legal department educates underwriters about new legal requirements; and

    b) DENIED to the extent that it seeks all other aspects of the work of Plaintiff's senior management group analyzing how to deal with STOLI transactions and the investigation of in-house counsel to identify potential STOLI policies.

2) A ruling on Defendants' motion to compel production of documents responsive to requests 8, 9, 11, and 14 of Defendants' First Request for Production is RESERVED pending in camera review of the disputed documents. Within fourteen (14) days of the entry date of this Order, Defendants are to inform Plaintiff which of the documents on Plaintiff's privilege log they are seeking. Plaintiff is to provide any still-disputed documents to the Court within fourteen (14) days of such notification by Defendants.

3) Defendants' motion to compel production of documents "clawed back" on privilege grounds is

   a) GRANTED as to the document Bates-numbered PMReed-0000057;

   b) GRANTED as to the document Bates-numbered PMReed-0001089; and

   c) DENIED as to the document Bates-numbered PMReed-0000450-51.

4) Defendants' request for attorneys' fees and costs incurred in bringing the motion is DENIED.

BY THE COURT:

_____
J. CURTIS JOYNER, J.